# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO CASTILLO, | 1:07-CV-00814 OWW GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| WARDEN MENDOZA-POWERS, et al., | |
| Respondents. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Riverside, after being convicted on September 11, 1986, by jury trial of first degree murder in violation of Cal. Penal Code § 187. See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit 1. He was sentenced to serve an indeterminate term of 27 years to life with the possibility of parole. Id. His minimum eligible parole date was December 24, 2003. See Answer, Exhibit 2 at 1.

On May 22, 2006, a subsequent parole suitability hearing was held before the California Board of Parole Hearings (hereinafter "Board"). Id. Petitioner participated in the hearing and was

represented by counsel. Id. At the conclusion of the hearing, the Board denied parole and deferred rehearing for three years. Id. at 72, 75.

Petitioner then sought relief in the state courts. He filed a petition for writ of habeas corpus on December 12, 2006, in the Riverside County Superior Court. See Exhibits to Petition. It was denied on December 27, 2006. Id. He then filed a habeas petition in the California Court of Appeal, Fourth Appellate District. Id. The petition was denied on March 27, 2007. Id. He also filed a petition for review in the California Supreme Court which was denied without comment on March 23, 2007. Id.

Petitioner filed the instant petition for writ of habeas corpus in this Court on June 4, 2007. He challenges the 2006 decision of the Board denying parole. He contends the Board's decision to deny parole was not supported by any material or relevant evidence and is therefore arbitrary and capricious. He also contends the Board's continued reliance on immutable factors to deny parole violates his due process rights. Respondent filed an answer to the petition on September 14, 2007, and Petitioner filed a traverse on October 15, 2007.

## **FACTUAL BACKGROUND**[1]

On April 10, 1996, between the hours of 6:30 p.m. and 7:00 p.m., Petitioner entered the residence under construction located at 31690 Rosemary Street in Thousand Palms, California. He began drinking beer with the victim Aaron Vigil. He attempted to sell cocaine to Vigil and Vigil became upset and both men got into a heated argument. Vigil directed Petitioner to leave the residence. Petitioner left and returned a short time later with a machete. Petitioner called from outside the residence for Vigil to come outside and Vigil refused. Petitioner entered the residence and began to chase Vigil through the house, striking him one time with the machete. Vigil ran into a bathroom where he had a .25-caliber automatic pistol. He pointed the pistol at Petitioner telling him to leave. Petitioner complied. Petitioner returned at approximately 12:30 a.m. the following morning armed with a .30-caliber carbine rifle. Petitioner proceeded to the front door of the house and Vigil opened the door. Seeing Vigil, Petitioner shot him, striking him with one

---

[1] The factual background is derived from the probation officer's report as recited in the parole hearing. See Answer, Exhibit 2 at 14-16.

round in the abdominal area. Investigators conducted a search of Petitioner's vehicle and found a loaded clip of .30-caliber bullets similar to the spent .30-caliber shell found inside the vehicle at the crime scene.

**DISCUSSION**

I.     Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

§ 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

Petitioner's claims were presented on December 12, 2006, in a petition for writ of habeas corpus to the Riverside County Superior Court. See Exhibits to Petition. On December 27, 2006, the superior court denied the petition finding the denial of parole was based on sufficient and substantial evidence. Id. Petitioner then presented petitions to the appellate court and to the California Supreme Court. Both petitions were summarily denied. Id. The California Supreme Court, by its "silent order" denying review, is presumed to have denied the claims presented for the same reasons stated in the opinion of the superior court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is guaranteed the following process: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id. It is clear from the record these three guarantees were given. He received notice of the hearing, he was heard at the hearing and he was told why he did

1  not qualify for parole.

2      "In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation

3  of *good time* does not comport with 'the minimum requirements of procedural due process,'

4  unless the findings of the prison disciplinary board are supported by *some evidence* in the

5  record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)."

6  Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (emphasis added).

7  The Ninth Circuit has held that this same standard also extends to parole determinations. Irons v.

8  Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the

9  Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due

10 process with respect to this interest if the board's decision is not supported by 'some evidence in

11 the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability

12 determination was supported by 'some evidence' in a habeas case, our analysis is framed by the

13 statutes and regulations governing parole suitability determinations in the relevant state." Irons,

14 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing

15 the record and determining whether the "some evidence" standard is met, the Court need not

16 examine the entire record, independently assess the credibility of witnesses, or re-weigh the

17 evidence. Sass, 461 F.3d at 1128.

18     California law provides that after an inmate has served the minimum term of confinement

19 required by statute, the Board "shall set a release date unless it determines that the gravity of the

20 current convicted offense or offenses, or the timing and gravity of current or past convicted

21 offense or offenses, is such that consideration of the public safety requires a more lengthy period

22 of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel

23 the prisoner will pose an unreasonable risk of danger to society if released from prison," the

24 prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The

25 Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it

26 has set forth in the California Code of Regulations.

27     To determine whether 'some evidence' supports the state court decision, the test is not

28 whether some evidence supports the reasons cited for denying parole, "but whether some

evidence indicates a parolee's release unreasonably endangers public safety." In re Lee, 143 Cal.App.4th 1400, 1408 (Cal.Ct.App.2006).

In denying parole in this case, the Board provided several reasons for its decision: 1) The nature and gravity of the commitment offense; 2) Failure to participate sufficiently in self-help programs; 3) Unfavorable psychological evaluation; and 4) Unrealistic parole plans. See Answer, Exhibit 2 at 72-78. Petitioner argues there is no evidence to support the finding that he currently poses an unreasonable risk of danger to society if released, and he argues the Board continues to rely on the immutable factors of the commitment offense in violation of his due process rights. Review of the Board's decision reveals the state court decision approving the Board's determination of unsuitability was not unreasonable.

The first factor mentioned by the Board in its decision was the commitment offense itself. Pursuant to § 2402(c)(1)(B), the Board found Petitioner committed the offense in a dispassionate and calculated manner, such as an execution-style murder. In support of this finding, the Board noted Petitioner had attacked the victim with a machete, left and armed himself with a rifle, and then returned several hours later and shot the victim immediately upon seeing him. See Answer, Exhibit 2 at 72. The finding is certainly supported by the evidence.

The Board also determined that the motive for the crime was inexplicable per § 2402(c)(1)(E). Id. Petitioner did not discuss the crime at the hearing, so he offered no explanation as to his motive for the offense. Nevertheless, the district attorney pointed to a 2002 psychological evaluation in which the examining psychologist concluded, "[T]he motivation for the offense appears to be the inmate's feeling of prideful injury in being shamed in front of others, in his efforts to retaliate against this source of public embarrassment." Id. at 63. Thus, this finding is also well-supported by the evidence.

Next, the Board found that Petitioner had failed to avail himself sufficiently in self-help programs and therefore remained an unreasonable risk of danger to the public. It was noted that Petitioner was advised at his 2002 parole hearing that he should seek out and participate in self-help programming, yet he had failed to do so. Id. at 63, 73 ("[I]t is clear that since 2001, 2002, there has been a significant drop off in your participation of self-help programs."). The Board

properly considered this information pursuant to § 2402(b), and the evidence supports the Board's finding that Petitioner still posed a serious threat to public safety should he be released.

The Board also noted the psychological report which was not in favor of parole. Dr. Steward stated that Petitioner's "probability of successfully integrating into the community is average. He continues to avoid taking responsibility for the index offense and is more concerned about how he sees his conviction as being unfair. He blames the legal system and victim for his incarceration instead of recognizing his role in his own fate." Id. at 73. In light of the psychological evaluation, the state court's conclusion that some evidence supported this finding was reasonable.

Finally, the Board considered Petitioner's parole plans pursuant to § 2402(b), (d). The Board noted that Petitioner had made efforts to secure employment and assistance, yet his plans remained unrealistic. Petitioner had marketable skills, but he did not have a job waiting for him. Given that Petitioner had never really lived a life as a productive citizen, the Board understandably desired firm plans before determining Petitioner would not pose a risk of danger to the public if released.

The Board then considered various circumstances which tended to show suitability pursuant to § 2402(d). Petitioner had completed several vocations including auto repair, auto air conditioning, life development, powder coating and metal fabrication. Petitioner had also been an active participant in the Eagle Program which includes programs in anger management, alcoholics anonymous, narcotics anonymous, and family awareness. See Answer, Exhibit 2 at 37-38, 75. However, the Board noted that Petitioner had not participated in the program since 2002. The Board determined that the nature and gravity of Petitioner's offense, his lack of self-help programming and therapy, his most recent psychological evaluation, and his lack of realistic parole plans outweighed these positive factors and concluded that Petitioner remained an unreasonable risk of danger to the public if released. This Court cannot conclude that the state court rejection of Petitioner's claim - that the Board's determination was not supported by some evidence - was not reasonable.

Petitioner's claim that the Board improperly relied on stale and immutable factors is

without merit. While it is true that in <u>Biggs v. Terhune</u>, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation," this is not the situation here. As discussed above, the Board relied heavily on Petitioner's lack of self-help programming, his recent unfavorable psychological evaluations, and his lack of realistic parole plans, in addition to the circumstances of the underlying crime.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The Petition for Writ of Habeas Corpus be DENIED; and
2. The Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the Objections.  The Finding and Recommendation will then be submitted to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 12, 2008**          /s/ **Gary S. Austin**
                                 UNITED STATES MAGISTRATE JUDGE

9